## LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.
### v.
### MELSON J. DAVIS ET AL.

1.  BILL OF LADING – SHIPPER'S ASSENT.—Whether a shipper knew of the terms and conditions of the bill of lading, and whether he assented thereto, are questions of fact to be determined by the jury from the evidence.

2.  SAME—How PROVED.—In attempting to prove the shipper's knowledge of, or assent to the terms of the bill of lading, the carrier is not limited to evidence of any one particular fact, but may prove all the circumstances surrounding the transaction which have any legitimate tende..cy to establish the shipper's knowledge or assent.

3.  INSTRUCTION—SHIPPING DIRECTIONS AS EVIDENCE.—Where, at the time of the delivery of freight for transportation, the shipper gave to the carrier certain shipping directions in which were contained the same identical terms and conditions limiting the carrier's common law liability as were inserted by the carrier in the bill of lading.  *Held*, that the shipping directions are evidence strongly tending to prove knowledge on the part of the shipper of the terms of the bill of lading as well as his assent thereto, and an instruction which held that unless the shipper's attention was called to the terms of the bill of lading at the time he received it, he was not bound by them, and which ignored the effect of the shipping directions as evidence of knowledge and assent was erroneous.

4.  SAME.—The third instruction was erroneous in that it only limited the carrier's exemption to damages arising from the plaintiff's negligence, the act of God, the public enemy and mob violence, and ignored some of the exemptions contained in the bill of lading.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed May 29, 1885.

This was an action on the case, brought by Melson J. Davis and others, copartners doing business under the firm name of Davis Brothers & Porter, against the Lake Shore and Michigan Southern Railway Company, to recover damages for the loss of certain oil by leakage, during its transportation from Buffalo to Chicago over the defendant's railroad. The leakage complained of resulted from delay in the transportation, which delay, as the defendant claims, was

occasioned by a general strike of the switchmen employed upon the different railroads centering in Chicago. The principal facts in the case, excepting those relating to said strike, are admitted by stipulation, and are, in substance, as follows:

On the 28th day of April, 1881, the Atlas Refining Company, of Buffalo, N. Y., delivered to the defendant eighty barrels of refined oil for transportation, consigned to the plaintiffs, at Milwaukee, Wis., said oil being at that time in apparent good order, and with no apparent leakage; that on the 20th day of May, 1881, said oil was delivered by the defendant to the Chicago, Milwaukee and St. Paul Railway Company, to be shipped from Chicago to Milwaukee, and when so delivered, one barrel was entirely empty, and all the other barrels leaking more or less and in a leaky condition; that on the day following, the last named railway company delivered said oil to the plaintiffs at Milwaukee; that the loss by said leakage was $141.20; that the plaintiffs used due diligence on their part, and that the loss of said oil was occasioned by shrinkage of the barrels during the delay in transportation on the line of the defendant's railroad. It is further stipulated that said oil was shipped on the following bill of lading:

" Form 73.                    BUFFALO, Apl. 28, 1881.

" Received of Atlas Refining Co., by the Lake Shore and Mich. Southern Railway, the following property in apparent good order (except as noted), marked and consigned as in the margin, which they agree to deliver, with as reasonable dispatch as their general business will permit, subject to the conditions mentioned below, in like good order (the dangers incident to railroad transportation, loss or damage by fire while at the depots or stations, loss or damage of combustible articles by fire while in transit, and unavoidable accidents excepted), at Chicago station, upon payment of charges.

"The company further agree to forward the property to the place of destination as per margin, but are not to be held liable on account thereof, after the same shall be delivered as above. The company, however, guarantee the through rate of freight as designated below.

"*Conditions:* The company do not agree to carry the property by any particular train, or in time for any particular market. Oils and all other liquids, whether carried in packages or tanks furnished by shippers or by the company, to be at owner's risk of leakage. Liquids in glass or earthen, drugs and medicines in boxes, glass and glassware in boxes, looking-glasses, marble, stoves, stove-plates and light castings, earthen or queensware, at owner's risk of breakage. Agricultural implements, cabinetware, and furniture not boxed, carriages, at owner's risk of breakage or damage by chafing. Oysters, poultry, dressed hogs, fresh meat and provisions of all kinds, trees, shrubbery, fruit and all perishable property at owner's risk of decay.

"It is a part of this agreement that all other carriers transporting the property herein receipted for as part of the through line, shall be entitled to the benefit of all the exceptions and conditions above mentioned; and if a carrier by water, he is to be entitled to the further benefit of exemption from loss or damage arising from collision, and all other damages incident to lake and river navigation.

"Grindstones and wooden bowls entirely at owner's risk of breaking or chipping.

"Davis Brothers & Porter,     D. 5569.
        "Milwaukee,              80 brls. refined oil.
            "Wis.                    80 c. brl.
"Via M. & St. P. R. R.,     O. K. L.
                            "C. M. Shattuck, Agt.

"April 28, '81."

It is further stipulated that the Atlas Refining Company, on delivering said oil to the defendant for transportation, gave to the defendant certain shipping directions, said shipping directions being a document of substantially the same terms, and containing each of the several conditions and stipulations appearing in said bill of lading.

The defendant gave evidence tending to show that said oil arrived at LaPorte, Indiana, sixty miles east of Chicago, on the 2d day of May, and was detained there in consequence of a strike of the switchmen in the employ of the defendant

and the other railroads terminating in Chicago, which commenced that day at noon; that the striking switchmen, after leaving the employ of said railroads, with the help of various other persons, forcibly and violently stopped the business of the defendant's road, thus compelling an entire suspension of its transportation of property; that said strike ended on the evening of May 17th, and on the following day the car containing the oil left LaPorte, and was delivered to the Chicago, Milwaukee & St. Paul Railway Company May 20th, and that said oil was delivered by that company to the plaintiffs May 21st; that the oil was transported from Buffalo to LaPorte, and at the conclusion of the strike, was transported from LaPorte to the point of delivery, to the Chicago, Milwaukee & St. Paul Railway Company, in a reasonable time; that at the commencement of the strike the defendant immediately employed double the usual force of men, and made every effort to move its trains and transact its business during the period of the strike, but its efforts were defeated by mobs of men collected in large numbers, who overpowered the defendant's employes with force and violence, which the defendant could not overcome, thus compelling a complete suspension of the business of the road; and that for this cause and none other the oil was delayed.

The jury found the issues for the plaintiffs, and assessed their damages at $141.20, for which sum and costs the plaintiffs had judgment.

Mr. Cyrus D. Roys and Mr. Pliny B. Smith, for appellant; as to instructions, cited E. T. Co. v. Wallace, 68 Pa. St. 302; I. & St. L. R. R. Co. v. Miller, 71 Ill. 463; Prescott v. Maxwell, 48 Ill. 82; South Evanston v. Lynch, 1 Bradwell, 63; Stein v. Kendall, 1 Bradwell, 103; Leake v. Brown, 43 Ill. 372; Harriet v. Thompson, 46 Ill. 460; M. D. T. Co. v. Moore, 88 Ill. 136.

Bailey, J.    One of the questions at the trial was, whether the plaintiffs were bound by the terms and conditions of the

bill of lading, and on that question the court gave to the jury the following instruction:

" The court instructs the jury that the printed notice printed upon the receipt of the terms and conditions upon which the defendant received and carried the goods in question is not binding upon the plaintiff, unless the jury find from the evidence that his attention was particularly called to that notice when he took the receipt, and that he expressly assented to the terms and conditions therein contained. The fact alone that the plaintiff accepted the receipt is no evidence that he assented to the terms of said notice."

A common carrier of property has an undoubted right to limit, to a certain extent, his common law liability, by an express contract with the shipper, but the rule is too well settled to admit of discussion that a clause in a receipt or bill of lading, exempting the carrier from such liability, is not binding on the shipper unless the latter knew of and assented to such exemption. Whether the shipper, however, knew of the terms and conditions of the bill of lading, and whether he assented thereto, are questions of fact to be determined by the jury, from the evidence.

In attempting to prove the shipper's knowledge of or assent to the terms of the bill of lading, the carrier is not limited to evidence of any one particular fact, but may prove all the circumstances surrounding the transaction which have any legitimate tendency to establish the shipper's knowledge or assent. Such facts may be shown, it is true, by direct evidence of express notice and assent at the time, but that is by no means the only evidence by which they may be established. They may be shown, presumptively, by evidence of a long course of previous dealings between the parties of a like character, or by previous proposals by the shipper to the carrier as to the terms and conditions upon which the shipment should be made. Indeed, it would be difficult to enumerate all the facts and circumstances which might have a tendency to prove the shipper's assent to the bill of lading.

The foregoing instruction, however, holds that unless the shippers' attention was called to the terms of the bill of lad-

ing at the time they received it, they are not bound by them. Whether their attention was called to them at that time does not appear, but it does appear and is admitted that, at the time of the delivery of the oil to the defendant for transportation, the shippers gave to the defendant certain shipping directions, in which were contained the same identical terms and conditions, limiting and qualifying the defendant's common law liability, which were inserted by the defendant in its bill of lading. The shipping directions were in the nature of a proposition for a contract, and we see no difficulty in holding that, when assented to by the defendant, they became binding on the shippers, so as to require no further assent or ratification on their part. But whether conclusive or not, the shipping directions are evidence strongly tending to prove knowledge on the part of the shippers of the terms of the bill of lading, as well as their assent thereto. It follows, necessarily, that the instruction was erroneous in ignoring their effect as evidence on those questions.

We are also of the opinion that the third instruction given to the jury at the instance of the plaintiffs, was erroneous. That instruction is as follows:

"The jury are instructed that the bill of lading offered in evidence recites that the goods were in apparent good order and condition when received by the defendant, and by said bill of lading the defendant contracted to deliver said goods in like good order and condition, at Milwaukee, Wis., and if the jury believe from the evidence that the goods were not delivered in as good order and condition as when received by defendant, ordinary wear and tear and ordinary deterioration excepted, and that the plaintiff was injured and has sustained damage thereby, then the plaintiff is entitled to recover, unless the jury believe from the evidence that the damage or injury to such goods resulted from some fault or negligence of the plaintiff, or from the act of God, the public enemy, or an irresistible and lawless mob."

By this instruction a portion, at least, of the conditions of the bill of lading, limiting and qualifying the defendant's common law liability, seem to have been ignored. By those

conditions the defendant was exempted from liability for loss arising from dangers incident to railroad transportation, including, in case of oils, the risk of leakage. If said conditions were assented to by the shippers, and that, as we have remarked, was a question of fact for the jury, the defendant was not chargeable with damages arising, without gross negligence on its part, from any of these excepted causes. The instruction, however, limits the exemption to damages arising from the plaintiff's negligence, the act of God, the public enemy and mob violence. It should have laid down a rule of exemption as broad as the one established by the parties in their contract.

For the error in giving the foregoing instructions the judgment will be reversed and the cause remanded.

Judgment reversed.